IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAWRENCE E. BARKER,                        6:12-CV-02148-BR

            Plaintiff,                     OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration[1],

            Defendant.

---

        [1]  Carolyn W. Colvin became the Acting Commissioner of
Social Security on February 14, 2013.  Pursuant to Rule 25(d) of
the Federal Rules of Civil Procedure, Carolyn W. Colvin should be
substituted for Michael J. Astrue as Defendant in this case.  No
further action need be taken to continue this case by reason of
the last sentence of section 205(g) of the Social Security Act,
42 U.S.C. § 405.

1 - OPINION AND ORDER

**TIM WILBORN**
P.O. Box 370578
Las Vegas, NV 89137
(702) 240-0184

      Attorney for Plaintiff

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**GERALD J. HILL**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2139

      Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Lawrence E. Barker seeks judicial review of a
final decision of the Commissioner of the Social Security Admini-
stration (SSA) in which she denied Plaintiff's application for
Disability Insurance Benefits (DIB) under Title II of the Social
Security Act and Plaintiff's application for Supplemental
Security Income (SSI) under Title XVI of the Social Security Act.
This Court has jurisdiction to review the Commissioner's final
decision pursuant to 42 U.S.C. § 405(g).

    Following a review of the record, the Court **REVERSES** the
decision of the Commissioner and **REMANDS** this matter for the

2 - OPINION AND ORDER

calculation and payment of benefits pursuant to sentence four, 42 U.S.C. § 405(g).

## ADMINISTRATIVE HISTORY

Plaintiff filed his applications for SSI and DIB on January 24, 2006, and alleged a disability onset date of August 16, 2005.  Tr. 71.[2]  The applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on March 19, 2008.  Tr. 20-35.  At the hearing Plaintiff was not represented by an attorney.  Plaintiff, his wife, and a vocational expert (VE) testified.

The ALJ issued a decision on March 28, 2008, in which he found Plaintiff was not disabled because even though he could not perform his past relevant work, he could perform other work existing in significant numbers in the national economy as a bench worker or printed products assembler.  Tr. 18.  That decision became the final decision of the Commissioner on December 5, 2008, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-3.

On February 3, 2009, Plaintiff filed a Complaint in this Court seeking review of the Commissioner's decision.  *Barker v. Comm'r,* 6:09-cv-00148-HO.  On December 3, 2009, the parties

---

[2]  Citations to the official transcript of record filed by the Commissioner on January 30, 2012, are referred to as "Tr."

3 - OPINION AND ORDER

stipulated to a remand of the case for a *de novo* hearing. Tr. 352-53.

An ALJ held a hearing on remand on August 31, 2010. Tr. 273-312.  At the hearing, Plaintiff was not represented by an attorney.  Plaintiff, his wife, and a VE testified.

The ALJ issued a decision on September 29, 2010, in which she found Plaintiff is not disabled because he can perform other work existing in significant numbers in the national economy in representative occupations such as motel cleaner, industrial cleaner, and price marker.  Tr. 327.  That decision became the final decision of the Commissioner on September 27, 2012, when the Appeals Council declined to assume jurisdiction of the case. Tr. 259-62.

Plaintiff now seeks review in this Court.


**BACKGROUND**

Plaintiff was born in January, 1958, and was 52 years old at the time of the August 2010 hearing.  He has a general equivalence degree.  Tr. 278.  Plaintiff has past relevant work experience as a gas-station attendant, truck driver/sanitation worker, and delivery driver.  Tr. 326.

Plaintiff alleges disability due to a head injury with "memory problems, severe mood swings, extreme headaches, [c]annot do simple math.  Problems carrying on a conversation."  Tr. 87.

4 - OPINION AND ORDER

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

5 - OPINION AND ORDER

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009). The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision. *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful
activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). *See
also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir.
2011).

At Step Two the claimant is not disabled if the Commissioner
determines the claimant does not have any medically severe
impairment or combination of impairments. 20 C.F.R. §§ 404.1509,

6 - OPINION AND ORDER

404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d
at 724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  20 C.F.R.
§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648
F.3d at 724.  The criteria for the listed impairments, known as
Listings, are enumerated in 20 C.F.R. part 404, subpart P,
appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.  20 C.F.R.
§§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling
(SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a
day, for 5 days a week, or an equivalent schedule."  SSR 96-8p,
at *1.  In other words, the Social Security Act does not require
complete incapacity to be disabled.  *Taylor v. Comm'r of Soc.
Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair
v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform

work he has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv),
416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

     If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the
burden shifts to the Commissioner to show a significant number of
jobs exist in the national economy that the claimant can perform.
*Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th
Cir. 2010).  The Commissioner may satisfy this burden through the
testimony of a VE or by reference to the Medical-Vocational
Guidelines set forth in the regulations at 20 C.F.R. part 404,
subpart P, appendix 2.  If the Commissioner meets this burden,
the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1),
416.920(g)(1).


### ALJ'S FINDINGS

     At Step One the ALJ found Plaintiff has not engaged
in substantial gainful activity since his August 16, 2005, onset
date.  Tr. 319.

     At Step Two the ALJ found Plaintiff had the severe
impairments of "post-concussion syndrome with headache and
personality change, and depression."  Tr. 320.

     At Step Three the ALJ concluded Plaintiff's impairments do

8 - OPINION AND ORDER

not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ found Plaintiff had the RFC to perform a full range of work at all exertional levels "limited to tasks no more complex than SVP 2, entry level unskilled work as defined in the Dictionary of Occupational Title.  The claimant should have no public contact.  The claimant should perform no work in a teamwork setting, but can have occasional superficial contact with coworkers."  Tr. 321.

At Step Four the ALJ concluded Plaintiff was not able to perform his past relevant work as a gas-station attendant, truck driver/sanitation worker, and delivery driver.  Tr. 326.

At Step Five the ALJ found Plaintiff could perform other jobs that exist in significant numbers in the national economy, specifically motel cleaner, industrial cleaner, and price marker. Tr. 327.


## THE MEDICAL EVIDENCE AND TESTIMONY

Plaintiff sustained a closed-head injury in a motorcycle accident on August 16, 2005 (his alleged onset date).  CT scans of Plaintiff's brain revealed mild brain contusion in the temporoparietal area.  Tr. 174.

On August 22, 2005, Plaintiff was seen in a hospital emergency room for cranial pain and nausea.  Tr. 424.

On November 9, 2005, treating physician Victor K. Lin, M.D.,

9 - OPINION AND ORDER

noted Plaintiff was aggressive, angry, and agitated. Tr. 211.
Plaintiff's wife was concerned about "his complete and abrupt
personality change." *Id.* Dr. Lin noted social isolation
behaviors consistent with brain injury and post-concussive
syndrome. Dr. Lin diagnosed Plaintiff with post-concussive
syndrome with post-concussive headaches, short-term memory loss,
and decreased concentration and attention to task with increased
distractibility.

On December 6, 2005, Dr. Lin examined Plaintiff and noted he
had made some improvement on Lexapro. Plaintiff's main concern
was headaches, which had slightly decreased in frequency but not
severity. Tr. 209. Plaintiff was calm and collected, and
Dr. Lin diagnosed Plaintiff with post-concussive syndrome with
post-concussive headaches, memory loss, decreased concentration,
and labile emotional status. *Id.*

On January 17, 2006, Dr. Lin noted Plaintiff's mood had
improved and his headaches decreased in frequency but not
severity. Tr. 208. Dr. Lin recommended a neuropsychic
evaluation "when the patient feels that he can tolerate it." *Id.*
Dr. Lin noted Plaintiff "is unlikely to return to his job for
over a year, as we have not even pursued cognitive testing at
this point in time." *Id.*

On March 20, 2006, Dr. Lin wrote to Michael Balm, M.D., a
neurologist, and described Plaintiff "with persistent headaches,

personality changes, memory loss, distractibility, decreased multitasking, decreased balance, and vomiting." Tr. 206. Dr. Lin's diagnosis was again post-concussion syndrome with post-concussive headaches, memory loss, decreased concentration, and emotional lability. Tr. 207.

Reviewing provider Frank Lahman, Ph.D., completed a Psychiatric Review Technique Form (PRTF) as to Plaintiff on March 24, 2006. Tr. 181-94. Dr. Lahman concluded Plaintiff had moderate limitations in maintaining social functioning and mild limitations in activities of daily living and maintaining concentration, persistence, and pace. Tr. 191.

Dr. Lahman also completed a Mental Residual Functional Capacity Assessment (MRFCA). Tr. 195-98. Dr. Lahman opined Plaintiff has difficulty mastering new detailed tasks, but he is able to understand and to remember short, simple tasks and directions. Dr. Lahman indicated Plaintiff is able to attend to and to carry out simple, routine tasks independently without special supervision or difficulty adhering to a schedule. Dr. Lahman concluded Plaintiff is able to sustain occasional public contact and could interact adequately with co-workers and supervisors. Tr. 197.

On April 17, 2006, Plaintiff reported to Dr. Lin that he continued to have headaches, but they improved on Neurontin. Dr. Lin noted "modest memory deficits," and again his diagnosis

of Plaintiff was post-concussive syndrome with post-concussive headaches and memory loss, and some emotional lability.  Tr. 205.

Dr. Balm examined Plaintiff on May 5, 2006.  Tr. 215-17. Plaintiff reported nearly daily headaches of varying intensity with dizziness, nausea, vomiting, and irritability.  He had short-term memory issues, was unable to return to his work pumping gas, and was "very short-tempered and labile."  Tr. 215. Dr. Balm reviewed Plaintiff's CT brain scans, which showed "'subtle hyperdensity about the peripheral right temporal lobe and inferior parietal lobe raising the possibility of a cerebral contusion."  Tr. 216.  Dr. Balm's diagnosis of Plaintiff was right temporal contusion with post-concussive headaches and personality change.  He found Plaintiff "is impulsive and displays some frontal lobe disinhibition behavior in the office, as well as inconsistent functional type delayed response to some instruction."  *Id.*  Dr. Balm noted Plaintiff's prognosis was guarded.  Tr. 217.

On August 15, 2006, William A. McConochie, Ph.D., conducted a neuropsychological evaluation of Plaintiff.  Tr. 218-25.  Test results did "not suggest significant deficits in either cognitive functioning or memory functioning."  Tr. 223.  Dr. McConochie concluded Plaintiff "does not appear to have any major injury-related psychological limitations to work activity."  Tr. 224. Dr. McConochie diagnosed Plaintiff with rule-out methadone

dependence, rule-out malingering (subconscious), rule-out narcissistic personality disorder, and rule-out dependent personality disorder. Tr. 223-24.

On May 24, 2007, Dr. Lin noted Plaintiff had good and bad days and diagnosed Plaintiff with post-concussive syndrome with post-concussive headaches, memory loss, and emotional lability. Tr. 243.

On September 12, 2007, Kim Barker, Plaintiff's wife, submitted a sworn statement in which she states her husband has had a complete personality change since the motorcycle accident. She describes him as having constant unpredictable head pain, loss of short-term memory, inability to tolerate crowds, inability to follow a conversation, and emotional lability. Tr. 151-52. There are similar sworn statements from Plaintiff's mother, sister, cousin, and friend submitted in April 2008. Tr. 155-65.

On October 4, 2007, Plaintiff and his wife began seeing Sharon Emery, a Licensed Marriage and Family Therapist (LMFT). Tr. 254. They saw LMFT Emery at least eleven times between October 2007 and April 2008.

On February 20, 2008, LMFT Emery noted: "After working with Larry it is absolutely obvious that he needs to be on disability. It is a very big deal for him just to show up for his 1 hour appointment 2x a month. I do not think the case notes show at

13 - OPINION AND ORDER

all the severity of his condition." Tr. 244.

At the March 19, 2008, hearing before the ALJ, Plaintiff testified his accident occurred "in 2005 I think." Tr. 23. Plaintiff testified he had headaches, loss of memory, and did not speak well. He could not multitask, but he could shower, brush his teeth, and tie his shoes. Plaintiff testified he can drive, and "I'm actually capable of following the speed limit and stop signs and stop lights and all that and, and, yeah, in motion is when I actually feel the best I think." Tr. 24. Although Plaintiff drove to the hearing, he said he would let his wife drive home.

On a typical day he rises at 3:00-4:00 a.m., makes coffee, and feeds his dog, cats, and goat. Tr. 24-25. Plaintiff sweeps and vacuums. Although he reads magazines, he can no longer read books. He prepares lunch and dinner for himself and his wife. Tr. 25. Plaintiff testified he always has a headache. "They're more severe at times than other times, but it's always, it's always there." *Id.* Plaintiff also testified he is embarrassed by his inability to do the things he used to do, and it takes five minutes to complete a five-word sentence. His sleep is erratic, and he usually naps during the day. Tr. 26.

Kim Barker testified she and Plaintiff have been married for ten years. *Id.* Ms. Barker testified they do not have a social life because Plaintiff's head pain causes them to cancel at the

last minute.  She is frightened to leave him at home when she
goes to work, and occasionally he calls her when he is emotional
and scared and she has to go home and "try to get him to
regroup."  Tr. 27.  Ms. Barker testified Plaintiff requires a
stable schedule, and he goes into "a downhill spiral" if his
routine is disrupted.  Tr. 28.  She stated he is anxious, fears
the unknown, and has difficulty making major decisions.  Ms.
Barker stated Plaintiff cannot express himself like he used to,
and he is not the happy, "loving guy that everybody likes when he
walks into a room."
Tr. 29.

On April 17, 2008, Dr. Lin examined Plaintiff for his annual
checkup.  Dr. Lin noticed Plaintiff stuttered, he had a headache,
and he reported he "gets a little bit out of sorts when he is
forced to deviate from his typical routine, which is fairly
simple."  Tr. 462.  Dr. Lin's diagnosis of Plaintiff was post-
concussive syndrome with headaches, memory loss, and emotional
lability.

On April 25, 2008, LMFT Emery completed a portion of a
Mental Residual Functional Capacity Assessment (MRFCA) in which
she indicated Plaintiff was markedly limited in his ability to
remember locations and work-like procedures, to remember or to
carry out very short and simple instructions, to maintain
attention and concentration, to sustain an ordinary routine, and

to complete a normal workday without an unreasonable number and length of rest periods.  Tr. 256-57.  LMFT Emery also opined Plaintiff was markedly limited in his ability to respond appropriately to changes in the work setting.  *Id.*

LMFT Emery prepared a summary of her chart notes on April 25, 2008.  Tr. 252-54.  She noted Plaintiff's wife would leave him notes listing what to do during the day, but Plaintiff could not remember to look at the notes.  LMFT Emery stated she had to remind Plaintiff what he was talking about two to three times during each counseling session.  Plaintiff also had difficulty focusing and concentrating and described debilitating headaches, anxiety, panic, and anger outbursts.   LMFT Emery noted:

> When we discuss him working at a gas station we laugh because he would not be able to take the money, get to the cash register and back without losing track of what he was doing and which car the change went to.  Even if he had a job that was a simple routine, he would not be able to be counted on to show up on any kind of regular basis.  Larry would work if he could.

Tr. 255.

LMFT Emery diagnosed Plaintiff with major depressive disorder and personality change due to a medical condition and him as having a Global Assessment of Functioning (GAF) score of 31.  Tr. 254.

On May 27, 2009, Dr. Lin saw Plaintiff for his six-month narcotic checkup.  Plaintiff took 10mg Methadone in the morning

16 - OPINION AND ORDER

and 5mg in the evening.  Tr. 461.  Plaintiff was stuttering and
reported being tired and overwhelmed after too many social
activities.  Although he continued to have headaches and his mood
was somewhat labile, "he keeps it somewhat under control if he
has a routine and sticks to it."  *Id.*  Dr. Lin's diagnosis of
Plaintiff again was post-concussive syndrome with headaches,
memory deficits, and emotional lability.

On October 14, 2009, Plaintiff began to see Michele
O'Connor, F.N.P.  Tr. 454.  Plaintiff reported he is difficult to
be around, he is easily agitated, and "stupid things make him
want to explode."  *Id.*  N.P. O'Connor assessed Plaintiff with
bipolar disorder and started Plaintiff on Prozac.

On February 26, 2010, N.P. O'Connor saw Plaintiff for
medication management of bipolar disorder.  Tr. 449.  Plaintiff
reported less agitation after starting on Prozac in October.

At the August 31, 2010, hearing before the ALJ, Plaintiff
testified he was unable to work because of his "inability to
concentrate, my inability to function, my inability to speak, my
headaches, my down time.  I have to be in control of the
situation or I don't have the ability to function in a
situation."  Tr. 280.  He has headaches daily for which he takes
methadone.  He naps two to three hours a day.  Tr. 281.  He cares
for chickens and a cat, does some weight-lifting (not, however,
for the prior three months), and tried to take up woodcarving as

17 - OPINION AND ORDER

a hobby (after three or four days he found he was not capable of doing it). Tr. 282. He drives a car about once a week to the laundromat or the grocery store. He usually shops with his wife, and she handles the finances. Tr. 283.

On an average day he makes coffee, listens to the news on the radio, watches dvds, feeds the cats, walks around the property, and feeds the wild birds. Tr. 283. Plaintiff stated he no longer sees LMFT Emery for counseling. Tr. 285. When he was asked how long he went to her, Plaintiff said "I couldn't even tell you. I don't have any idea." *Id.*

Plaintiff testified his Prozac had recently been increased. Tr. 287. He stated he has "extreme problems with anger," and he will "scream and yell and break things." *Id.* A week before the hearing he broke the television because it didn't "do what it was supposed to." *Id.* He prefers to be alone and does not socialize. Tr. 290.

Kim Barker testified Plaintiff has basically stayed the same condition since his accident with increased depression. Tr. 293. She stated Plaintiff's Prozac needed to be increased because Plaintiff exhibited increased agitation. She recently had to go home from work to try to calm him down.

## DISCUSSION

Plaintiff contends the ALJ erred at Step Three (1) by

18 - OPINION AND ORDER

finding Plaintiff was less than fully credible; (2) by improperly rejecting the opinions of treating physician Victor K. Lin, M.D., and treating therapist Sharon Emery, L.M.F.T.; (3) by improperly finding Plaintiff's impairments do not equal any Listing; and (4) by improperly rejecting lay testimony.

## I.   Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). *See also Vasquez v. Astrue,* 547 F.3d 1101, 1104 (9th Cir. 2008). The ALJ's findings, however, must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). *See also Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir. 2001). Unless there is affirmative evidence to establish that the claimant is malingering, the ALJ's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Id.* at 724. *See also Holohan,* 246 F.3d at 1208. General findings (*e.g.,* "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick,* 157 F.3d at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility

determination with findings sufficiently specific to permit the
court to conclude that the ALJ did not arbitrarily discredit the
claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th
Cir. 2002).

When deciding whether to accept a claimant's subjective
symptom testimony, "an ALJ must perform two stages of analysis:
the *Cotton* analysis and an analysis of the credibility of the
claimant's testimony regarding the severity of her symptoms."
*Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges
> disability based on subjective symptoms "must
> produce objective medical evidence of an under-
> lying impairment which could reasonably be
> expected to produce the pain or other symptoms
> alleged." *Bunnell,* 947 F.2d at 344 (quoting
> 42 U.S.C. § 423(d)(5)(A) (1988)); *Cotton,* 799
> F.2d at 1407-08. The *Cotton* test imposes only
> two requirements on the claimant: (1) she must
> produce objective medical evidence of an
> impairment or impairments; and (2) she must
> show that the impairment or combination of
> impairments *could reasonably be expected to*
> (not that it did in fact) produce some degree
> of symptom.

*Smolen,* 80 F.3d at 1282. *See also Carmickle v. Comm'r Soc. Sec.
Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ found Plaintiff not credible to the extent that his
allegations exceed the ALJ's evaluation of Plaintiff's RFC.
Tr. 322. The ALJ noted:

> The claimant reported the ability to engage
> in a wide range of activities in a function
> report completed on February 20, 2006 [cita-
> tion omitted]. This suggests that his limi-

> tations are not as significant as alleged.
> He reported that he lived with his wife.
> He stated he was able to care for animals
> and had no problems with his personal care.
> While he reported that he could not prepare
> meals, he noted that he could make a sandwich,
> heat up soup, pour cereal, and make coffee
> daily.  He reported going outside daily,
> driving a car, and shopping in stores.  His
> hobbies and interests were noted include
> reading which he did everyday and watching
> television which he reported he did sometimes.
> Both of these activities are noted to require
> the ability to concentrate.

Tr. 322.

The ALJ stated Plaintiff did not appear to have a speech deficit at the hearing and found Plaintiff's complaint of difficulty communicating and speaking was not "well documented by medical observers."  Tr. 324.  The record, however, reflects treating physician Dr. Lin noted twice that Plaintiff spoke with a stutter, and examining physician Dr. Balm noted Plaintiff exhibited pressured speech.  Tr. 216, 461-62.  All five lay witnesses described limitations in Plaintiff's ability to communicate.  Tr. 98-105, 151-54, 155-56, 158-59, 160-61, 162-65. The ALJ also found Plaintiff's need to lie down due to headaches "is not established in his medical records."  Tr. 325. The record, however, reflects Plaintiff repeatedly reported debilitating headaches to his doctors.  Tr. 207, 215, 461. Thus, these findings by the ALJ do not constitute legally sufficient reasons supported by substantial evidence in the record for the ALJ to find Plaintiff's testimony less than fully

21 - OPINION AND ORDER

credible.

The Court notes there is not any affirmative evidence in the record of Plaintiff malingering, Plaintiff's impairments could cause some degree of the symptoms alleged, and there is not any evidence in the record that contradicts Plaintiff's assertion that he is only able to engage in sporadic activity.  Thus, the Court finds the ALJ erred when she found Plaintiff was less than fully credible because the ALJ did not provide legally sufficient reasons supported by the record for doing so.

## II.  Medical Providers

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).  If there is not a conflict between medical-source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  More weight is given to the opinion of a treating physician because that person has a greater opportunity to know and to observe the patient as an individual.  *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007).  In such circumstances the ALJ must also give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Id.*  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ must provide clear and convincing reasons for rejecting it.  *Id.* (treating physician); *Widmark v. Barnhart,* 454

F.3d 1063, 1067 (9th Cir. 2006)(examining physician).  Even if
one physician is contradicted by another physician, the ALJ may
not reject an opinion without providing specific and legitimate
reasons supported by substantial evidence in the record.  *Orn,*
495 F.3d at 632; *Widmark,* 454 F.3d at 1066.  The opinion of a
nonexamining physician by itself is insufficient to constitute
substantial evidence to reject the opinion of a treating or
examining physician.  *Widmark,* 454 F.3d at 1066 n.2.

The ALJ may reject physician opinions that are "brief,
conclusory, and inadequately supported by clinical findings."
*Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

**A.  Dr. Lin**

The ALJ noted Plaintiff reported to Dr. Lin that his
methadone regimen was adequate and without side effects and that
he does better when his routine is not disturbed.  Tr. 325.
Although the ALJ rejected Dr. Lin's January 2006 opinion that
Plaintiff's medical condition would prevent him from working for
at least a year, Dr. Lin's opinion was not contradicted by any
treating or examining physician and the ALJ failed to provide any
reasons supported by the record for rejecting Dr. Lin's opinion.
Even if the ALJ interpreted Dr. McConochie's assessment of
Plaintiff's condition as contradicting Dr. Lin's opinion,
Dr. McConochie did not explicitly address the issue of
Plaintiff's post-concussive syndrome and headaches.

On this record the Court concludes the ALJ erred when she rejected Dr. Lin's opinion because the ALj did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

**B. Licensed Marriage and Family Therapist Emery**

The ALJ gave LMFT Emery's opinions "no weight."  Tr. 325. The ALJ found the number of functions that LMFT Emery rated as markedly impaired was inconsistent with the Plaintiff's estimate of his limitations and, therefore, undermined LMFT Emery's credibility.  The record, however, reflects LMFT Emery's functional limitation assessment is substantially similar to the Plaintiff's assertions regarding his limitations.

On this record the Court concludes the ALJ erred when she rejected Ms. Emery's opinion because the ALJ failed to provide legally sufficient reasons supported by substantial evidence in the record for doing so.

**REMAND**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by

further administrative proceedings or when the record has been
fully developed and the evidence is insufficient to support the
Commissioner's decision.  *Strauss v. Comm'r,* 635 F.3d 1135, 1138-
39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593
(9th Cir. 2004)).  The court may not award benefits punitively
and must conduct a "credit-as-true" analysis to determine whether
a claimant is disabled under the Act.  *Id.* at 1138.

     Under the "credit-as-true" doctrine, evidence should be
credited and an immediate award of benefits directed when:
(1) the ALJ has failed to provide legally sufficient reasons for
rejecting such evidence, (2) there are not any outstanding issues
that must be resolved before a determination of disability can be
made, and (3) it is clear from the record that the ALJ would be
required to find the claimant disabled if such evidence were
credited.  *Id.*  The reviewing court should decline to credit
testimony when "outstanding issues" remain.  *Luna v. Astrue,* 623
F.3d 1032, 1035 (9th Cir. 2010).  The "credit-as-true" doctrine
is not a mandatory rule in the Ninth Circuit, but it leaves the
court flexibility in determining whether to enter an award of
benefits upon reversing the Commissioner's decision.  *Connett v.
Barnhart,* 340 F.3d 871,  876 (citing *Bunnell v. Sullivan,* 947
F.2d 871 (9th Cir. 2003)(*en banc*)).

     This Court has determined the ALJ erred when she concluded
Plaintiff was not fully credible and when she rejected the

opinions of Dr. Lin and Ms. Emery.  If credited, those opinions establish that Plaintiff is disabled.  Thus, the Court concludes Plaintiff is disabled based on this medical record and no useful purpose would be served by a remand of this matter for further proceedings.  *See Harman,* 211 F.3d at 117.

Accordingly, this matter is remanded for the calculation and award of benefits.


## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner pursuant to sentence four, 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits to Plaintiff.

IT IS SO ORDERED.

DATED this 20th day of February, 2014.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge


26 – OPINION AND ORDER